JOSEPH HARRINGTON
Acting United States Attorney
Stephanie Van Marter
Assistant United States Attorney
Post Office Box 1494
Spokane, WA  99210-1494
(509) 353-2767

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>JESE DAVID CARILLO CASILLAS (2),<br>ROSA ARACELI GRANADOS (3),<br>GABRIELA MENDOZA VAZQUEZ (7),<br>BRITTNEY LEE ZARAGOZA (10),<br>SALVADOR GUDINO CHAVEZ (11),<br>ERICA MARIA SOLIS (15),<br>EDGAR OMAR HERERRA FARIAS (16),<br>JUAN BRAVO ZAMBRANO (19),<br>MIGUEL REYES GARCIA (21),<br>JOSE ADRIAN MENDOZA (23),<br>VERONICA ELVIRA CORTEZ (24),<br>JULIO CESAR ROSALES SAUCEDO (9),<br>ADAM BENJAMIN GOLDRING (12);<br>AND<br>ALFREDO MAGANA GARIBAY, aka FREDDY (18)<br>　　　　　　Defendants. | 4:15-CR-6049-EFS<br><br>Notice of Expert Witnesses and Rule 16 Expert Summaries |

Notice of Expert Witnesses and Rule 16 Expert Summaries - 1

Plaintiff, United States of America, by and through Joseph Harrington, Acting United States Attorney for the Eastern District of Washington and Stephanie Van Marter, Assistant United States Attorney for the Eastern District of Washington, respectfully submits the following Notice of Expert Witnesses and Rule 16 Summaries.

## FORENSIC CHEMISTS

Attached please find "Curricula Vitaes" for Forensic Chemist/Scientists, Minh C. Nguyen, Suk I. Fullbright and Christopher Benintendo, of the Drug Enforcement Administration Laboratories. (*See*, Government's Attachment A-1, Curriculum Vitae for Minh C. Nguyen, Government's Attachment A-2, Curriculum Vitae Suk I. Fullbright, and Government's Attachment A-3, Curriculum Vitae Christopher Benintendo). Ms. Nguyen, Ms. Fullbright and Mr. Benintendo are the DEA forensic chemists assigned to this cause number and therefore conducted the testing for the drug evidence sought to be admitted in this matter.

The United States will seek to admit the opinion of these listed chemists summarized in the lab reports previously provided and noted by their discovery pages below. The United States is also in the process of disclosing additional Rule 16 materials to include the raw data, notes and procedures followed for all testing conducted.

Notice of Expert Witnesses and Rule 16 Expert Summaries - 2

Drug Exhibits to Be Admitted[1]:

1. FBI Exhibits 1.01 and 1.02: Packaging and controlled substances confirmed to contain Fentanyl and trace amounts of Heroin seized from Defendants Casillas and Figueroa- *See,* discovery pages 100000001-14.

2. DEA Exhibit 12: Packaging and methamphetamine seized from the Defendant Casillas- *See*, discovery pages 100000029-41; 10001334-1338, 60000007.

3. RCMP Drug Seizure Grand Forks Exhibits 31 I-N; 32 A-S[2]: Packaging and controlled substances confirmed to be methamphetamine, cocaine and heroin methamphetamine seized from

---

[1] The United States has not cited to every discovery page reference the drug seizures.

[2] The total seizure from this traffic stop was approximately 18 kilograms of methamphetamine, 4 kilograms of cocaine and 170 grams of heroin. This seizure occurred in Canada and as a result, the controlled substances have been provided by the RCMP to the DEA laboratory in order to have forensic chemists located in this country do testing and provide expert testimony at the time of trial.  As soon as the lab results and raw data are received, they will be provided to counsel. Due to DEA laboratory resources, the entire amount will not be tested; only amounts sufficient to confirm that there was more than 4.5 kilograms of pure methamphetamine, more than 100 grams of heroin and more than 500 grams of cocaine present.

Notice of Expert Witnesses and Rule 16 Expert Summaries - 3

    Defendants Juan Bravo and Marcial Zambrano and Miguel Reyes Garcia - *See*, discovery pages 10000982-1027; Hard drive provided by RCMP.

4. Deschutes County, Oregon Evidence Items 1 and 2: Packaging and cocaine seized from Defendant Solis - *See,* discovery pages 100001674-1708.

5. FBI Exhibit 1B20: Packaging and methamphetamine seized from Defendants Casillas and Landa- *See,* discovery pages 100000547-607.

6. FBI Exhibits 1B184 and 1B185: Packaging and methamphetamine seized from Juan Bravo Zambrano- *See,* discovery pages 10002018-2021.

More specifically, the United States will seek to admit their expert testimony as to the chemical testing and analysis conducted on the above referenced samples submitted. This expert testimony will include their opinion as to the type of controlled substance present; the purity of controlled substance and how that relates to the overall weight of each sample; the presence or lack of presence of any cutting agents; and the total weight of each evidentiary item both in purity and mixture and substance of controlled substance present. The United States will also solicit detailed testimony from Ms. Fullbright as to the identification of Fentanyl and what type of controlled substance it is and its characteristics. These proposed experts will also testify about their background and qualifications, the commonly accepted scientific methodology followed in reaching their conclusions as well as the peer review completed to test the accuracy of her results.

Notice of Expert Witnesses and Rule 16 Expert Summaries - 4

## DRUG MODUS OPERANDI EXPERT

Attached please find the "Curriculum Vitaes" of Special Agent William Leahy of the Federal Bureau of Investigation, Sgt. Scott Barlow and Constable Erik Kimura with the Royal Canadian Mounted Police (hereafter RCMP) (Government's Attachments B-1, B-2 and B.3)[3].

The United States submits this proposed expert modus operandi testimony from two perspectives, one based upon the training and experience of American law enforcement and the other, Canadian law enforcement. Given that this conspiracy operated in both countries, the United States respectfully submits it is appropriate to present this modus operandi expert testimony of law enforcement from both jurisdictions.

---

[3] The United States will be calling the undercover agent who was the individual in direct contact with several defendants and posed as the "money launderer." The United States is not calling him as an "expert witness" given the significance of his role as a fact witness. However, the United States properly will solicit from him testimony based upon his training and experience and further solicit testimony from him as to the meaning and significance of various events in the conspiracy. All of which are documented in the reports previously provided to counsel in discovery.

Notice of Expert Witnesses and Rule 16 Expert Summaries - 5

The Government expects this expert testimony to encompass various topics about transnational drug trafficking organizations to include the following:

1) *Importance and use of multiple geographic locations*:

It is common for transnational drug trafficking organizations to utilize various geographic areas within the United States and Canada. The expert testimony will explain to the jury the basic need to get the product from its source location, Mexico, to their distribution hubs, much like any successful international business. For organizations operating on the west coast of the United States, it is common to have a "halfway" location, which is typically in the Los Angeles CA area or Phoenix AZ area depending on the origination source of the drugs. The purpose of that half- waypoint location is to have a safe area to unload the bulk shipments secreted within vehicles. The bulk shipment is then broken down into smaller shipments destined for the distribution hubs.

The proposed experts will further testify that areas in the Eastern District of Washington (EDWA) to include Yakima and the Tri-cities, are distribution hubs for these organizations. From the distribution hubs, the shipments are broken down again for particular customers depending on the product. As will be discussed more fully below, financial profit drives which drugs are

Notice of Expert Witnesses and Rule 16 Expert Summaries - 6

distributed where from the distribution hubs. From the distribution hubs in this district, the common locations that receive the shipments include North Dakota, Minnesota, Illinois, Idaho, Montana, Vancouver BC and locally to the Spokane area.

2) ***Transportation Methods, Quantities and Pricing of Cocaine, Methamphetamine, Heroin and Fentanyl in the United States and Canada relative to Transactional Drug Trafficking Organizations***

The expert testimony from these witnesses will also include an understanding of what quantities and kinds of controlled substances are typically trafficked as well as their frequency of shipment. The United States anticipates the testimony will be that the bulk shipments from the source location (Mexico) typically contain upwards of 50 pounds of mixed product to include methamphetamine, cocaine, heroin and now Fentanyl. Those bulk shipments are then broken down to 10-20 pound shipments at the half-waypoint locations and transported in various ways to the distribution hubs. The methods of transportation include vehicles with secreted compartments and the use of commercial bus lines. Once at the distribution hub, the shipments are then prepared for distribution. These shipments typically come from the source city several times per week.

The proposed expert testimony will also include an understanding of the importance of the location of sale in the distribution network. As indicated

Notice of Expert Witnesses and Rule 16 Expert Summaries - 7

above, the distribution hubs further break down bulk shipments after they have already gone through the half-waypoint cities.  The proposed expert testimony will explain why these distribution hubs typically send the product into Vancouver BC area and then east as noted above.  For instance, a majority of the cocaine shipped to the distribution hubs will go north into Canada as a kilogram of cocaine will sell anywhere from $55,000 to $70,000 per kilo (US dollars).  A majority of the methamphetamine is typically sent east to locations in North Dakota and Minneapolis because one pound of methamphetamine in those locations can sell anywhere from 15,000 to 20,000 per pound whereas on the west coast, you can only sell a pound for approximately $3,500 to $6000.  The proposed experts will also testify as to the pricing and trafficking pattern of heroin and a new opiate to the drug scene, Fentanyl

3) ***Flow of Cash Drug Proceeds***

The proposed expert testimony will also address what happens to the cash drug proceeds in these transitional organizations.  Specifically, the expert witnesses will testify that like any international business, there is overhead and daily expenses that must be paid. These overhead expenses include but are not limited to the following: housing costs at the half way point and distribution hub locations; vehicle costs to include the costs associated with building secret compartments or "Clavos"; payments to various workers in the organization to

Notice of Expert Witnesses and Rule 16 Expert Summaries - 8

include transporters who drive the shipments from the source locations all the way to the distribution cities; and costs associated with lost shipments that are either robbed or seized by law enforcement.

Typically, the leader/organizers that are located at the distribution hubs and source locations, will direct the flow of the cash drugs proceeds.  The cash drug proceeds are then disbursed directly into bank accounts via wire transfer or transported back in bulk cash shipments to the source locations.  The expert testimony will also address the importance of having access to legitimate businesses who can "launder" or wash the drug cash proceeds.  It is only through these front companies that the organizations can utilize bank accounts for wire transfers.  A majority of the wire transfers within the United States' are directed to pay the above referenced overhead costs while the majority of the "profits" are sent to the source location via bulk cash or wire transfer.

4) ***Various Roles of those involved in the Transnational organization***:

As referenced above, the proposed expert testimony will further explain the various roles members of these organizations assume in order for the entire venture to be successful.  For example, there are leader/organizers, distributors, facilitators and transporters:

Notice of Expert Witnesses and Rule 16 Expert Summaries - 9

*Leader/organizers* are typically placed at the source locations, half-waypoints and distribution hubs. They are typically family members of those in charge at the source city locations, but not always. As indicated, they typically have a larger breadth of knowledge as to the larger organization and with that, greater responsibility and control over the drug shipments and cash flow. They are also responsible for recruiting transporters, facilitators and distributors.

*Distributors* are those that are actually selling the product and collecting the cash that is turned over to the leader/organizer. The expert testimony will include an understanding of the pressure placed upon distributors and their respective boss (leader/organizer) as they are responsible for moving a specific amount of product as dictated by the organization. As a result, they are typically tasked with developing a customer base in multiple distribution cities.

*Facilitators* are utilized to rent houses, cars, open funnel bank accounts and at times, collect money. The expert testimony will further explain to the jury that they are typically not directly involved in the drug distribution however, do have some scope of knowledge as to the distribution activities. The testimony will also be that facilitators are often from the same geographical area as the distributors and sometimes related to or involved with the distributors.

*Transporter*s- The expert testimony will explain that these individuals are often recruited by the distributors and leader/organizers who are tasked with

Notice of Expert Witnesses and Rule 16 Expert Summaries - 10

transporting the drug and money shipments to and from the source cities, halfway points or distribution hubs.  Transporters typically do not have a broad scope of knowledge and are tasked with not only transporting drug shipments but also drug cash proceeds.  They are paid nominally for their involvement.  Often transporters are promoted to distributors once they have established themselves as trustworthy.

The basis of the expert opinion sought, is the background and experience of each witness in investigating transnational drug trafficking organizations.  As noted in the attached Curriculum Vitae's, each of the proposed experts has extensive experience in investigating these organizations over the last 20 plus years.  Aside from extensive training, this background would include the knowledge gained from the number of investigations they have participated in, the hundreds of witness and Defendant interviews of members of these organizations who have detailed the organizations and their operations.  Their basis of knowledge has also been developed through the use of confidential sources who have infiltrated these organizations and provided reliable and verified intelligence as to their operations.  It also includes the knowledge gained form working with various law enforcement entities both within and outside the United States.

## FINGERPRINT SPECIALISTS

Attached please find "Curricula Vitaes" for Casey K. Quigley, Physical Scientist/Forensic Examiner with the Federal Bureau of Investigation Forensic

Notice of Expert Witnesses and Rule 16 Expert Summaries - 11

Examination Unit, Michael Hall Senior Fingerprint Specialist with the Drug Enforcement Administration, and Lindsey Nowack, Forensic Identification Assistant with the RCMP Integrated Forensic Identification Services.  (*See*, Government's Attachment C-1, Curriculum Vitae for Casey Quigley, Government's Attachment C-2, Curriculum Vitae Michael Hall[4], and Government's Attachment C-3, Curriculum Vitae for Lindsey Nowack).

At trial, the United States intends to present the testimony and opinions of these forensic examiners as it relates to the following exhibits:

<u>Latent Fingerprint examination Results to Be Admitted[5]</u>:

1. FBI Exhibits 1.01 and 1.02: Packaging from Fentanyl seized with latent fingerprint identification belonging to Defendants Casillas and Figueroa- *See,* discovery pages 100000001-14 and 60000008.
2. FBI Exhibit 1B21 (Item 12 for FBI lab) : Packaging from methamphetamine seized with latent fingerprint identification belonging to Defendants Casillas and Landa- *See,* discovery pages 100000547-607; 10000615-624.
3. FBI # 390032VB2/ Exhibits 32 A1, C1, D1, H1, I1, J1, N1, O1- various items of packaging from drug seizure in Grand Forks BC and

---

[4] Forensic Examiner Hall has been out of the office.  The United States will provide his CV as soon as it is received,

[5] The United States has not cited to every discovery page reference the fingerprint examinations.

Notice of Expert Witnesses and Rule 16 Expert Summaries - 12

latent fingerprint identification belonging to Miguel Reyes Garcia.

The forensic examiners will first testify as to their respective educational background and expertise in latent print examination.  They will then provide expert testimony, as detailed in the above previously provided reports, of thier latent print examination of the various exhibits, detailing what was examined and whether any fingerprints suitable for comparison were developed utilizing various forensic methods.  If a fingerprint suitable for examination was developed, the forensic examiners will testify as to the comparison of that fingerprint to known fingerprints of the Defendants.

The United States also intends to seek expert testimony from these forensic examiners about why fingerprints are sometimes not found on exhibits submitted for analysis.  Each examiner will testify as to the all the evidence they examined and why a fingerprint would not necessarily be located on all those items.  The United States has also provided in discovery the additional Rule 16 materials to include the raw data, notes and procedures followed for all testing conducted.

Notice of Expert Witnesses and Rule 16 Expert Summaries - 13

## Conclusion

The foregoing expert testimony will assist the trier of fact in understanding the evidence and determining material facts in issue. The United States reserves the right to supplement this notice given the changing nature of the case and Defendants set for trial.

DATED July 14, 2017.

            MICHAEL C. ORMSBY
            UNITED STATES ATTORNEY

            *s/Stephanie Van Marter*
            Stephanie Van Marter
            Assistant United States Attorney

Notice of Expert Witnesses and Rule 16 Expert Summaries - 14

# **CERTIFICATION**

I hereby certify that on July 14, 2017, I electronically filed the foregoing with the Clerk of the Court and counsel of record using the CM/ECF System.

Robin Emmans, robin_emmans@secondstreetlaw.com
Jim Egan, jim.egan@owt.com
Ricardo Hernandez, hloffice@basinis.com
Victor H. Lara, vh_lara@hotmail.com
Gregory Lee Scott, gregory@scottlaw.net
Troy Joseph Lee, troylee@qwest.office.net
Samuel Swanberg, 2lawyers@owt.com
Richard A. Smith, rasmith@house314.com
Kenneth D. Therrien, kentherrien@msn.com
Scott W. Johnson, scott@johnsonorr.com
Lee Edmond, ledmond.esq@gmail.com
Ronald A. Van Wert, rvw@ettermcmahon.com
Richard J. Troberman, tmanlaw@aol.com
Michael Lynch, mwlynch@yvn.com

*s/Stephanie Van Marter*
Stephanie Van Marter
Assistant United States Attorney

Notice of Expert Witnesses and Rule 16 Expert Summaries - 15